UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 15 CR 415–2 |
|---|---|
| v. | Judge Sharon Johnson Coleman |
| MARCO CAMACHO | |

**GOVERNMENT'S MOTION TO BAR ENTRAPMENT DEFENSE**

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves this Court to bar an entrapment defense by defendant Marco Camacho. In support of this motion, the government states as follows:

**Introduction**

Defendant has told the government and this Court that he intends to raise an entrapment defense. Yet, despite repeated requests from the government, defendant has failed to provide a proffer of the evidence he plans to introduce to support the defense. In light of the current record, defendant is not entitled to an entrapment defense. The government recognizes that it is filing this motion just hours before the start of trial. But the government waited this long to file this motion to allow the defense every reasonable opportunity to provide any sort of proffer in support of an entrapment defense.

**Background**

**I.   The Charged Crime**

Defendant is charged in one count with aiding and abetting the distribution of 50 grams or more of methamphetamine by Victor Israel Lozano-Garcia on February

25, 2015. R. 100. As discussed at length in the government's motion to admit evidence under Rule 404(b), R. 71 at 5–40, this case is the result of a multi-month investigation into defendant. Between December 2014 and February 2015, defendant regularly spoke with two individuals who, unbeknownst to him, were cooperating witnesses working with law enforcement ("CW1" and "CW2"). These individuals spoke with defendant about the possibility of arranging drug transactions: (i) in December 2014, defendant introduced CW1 to an individual known as "Arturo" because Arturo wanted to distribute kilogram-quantities of narcotics to the cooperating witnesses; (ii) in January 2015, defendant and an individual named Anthony Ledesma provided CW1 and CW2 with a sample of heroin in hopes of conducting a larger deal; (iii) later in January 2015, defendant spoke with another supplier, Francisco Guel, about arranging a 10-kilogram cocaine deal (and defendant again procured a sample of heroin for the cooperators); (iv) in February 2015, defendant procured a sample of marijuana for the cooperating witnesses in the hopes of conducting a larger marijuana deal. None of those contemplated drug deals materialized.

Beginning in late 2014, the cooperating witnesses spoke with defendant about obtaining wholesale quantities of methamphetamine. Over a number of conversations, defendant talked with the cooperating witnesses about getting methamphetamine, identified an individual named "Israel" (co-defendant Victor Israel Lozano-Garcia) as someone whom defendant knew could supply methamphetamine, assisted the cooperators with procuring methamphetamine from Lozano-Garcia, and attempted to get methamphetamine from another supplier whom

defendant knew (named Jaime Reyna) when defendant believed that Lozano-Garcia no longer wanted to deal with defendant. Defendant also introduced the cooperating witnesses to Lozano-Garcia; drove with Lozano-Garcia and CW2 to the area near Lozano-Garcia's stash house so that Lozano-Garcia could show defendant and CW2 where Lozano-Garcia wanted to do the deal; and about a week later, told CW2 that Lozano-Garcia changed the deal location and showed CW2 the new spot. Based on defendant's substantial assistance, on February 25, 2015, Lozano-Garcia delivered about 550 grams of methamphetamine to the cooperating witnesses in exchange for $9,500.

The cooperating witnesses agreed to pay defendant $500 for brokering this one deal. Three days after the deal took place, CW2 paid defendant. Defendant, however, was not motivated by the $500 to do the deal. As defendant was helping CW2 to meet with Lozano-Garcia on February 25, defendant told CW2, "I wouldn't have taken the 500 dollars." Also, defendant participated in a post-arrest interview, waived his *Miranda* rights in writing, admitted that he was paid by the cooperating witnesses, but also said that he told the cooperating witnesses, "I don't want it," referring to the $500. Defendant also said during his interview, "To be honest with you, I say, 'I don't want it.'" Defendant only received $500 for brokering the deal. At no time did the cooperating witnesses offer defendant anything else of value for arranging the drug deal. Nor did the cooperating witnesses threaten defendant in any way to conduct the charged methamphetamine deal or help with any of the earlier attempted deals.

## II. The Government's Pretrial Request for a Proffer

Since being indicted, defendant repeatedly has stated his intention to raise an entrapment defense. In response, the government has asked for a pretrial proffer of defendant's proposed defense. The government asked for a proffer in early communications with prior counsel. The government also asked for such a proffer in its motion *in limine* filed in April 2017, R. 71 at 41, and again during the pretrial conference held on November 17, 2017. During the pretrial conference, counsel for defendant agreed to provide a proffer by the following Monday, November 20, 2017. Defendant did meet that deadline. In e-mails from the government to defense counsel on November 27, 29, and 30, 2017, the government again asked defendant for a proffer.[1] Yet, to date, the defense has not provided any proffer of the contemplated entrapment defense.

## **Argument**

Defendant wants to argue that he was entrapped into aiding and abetting (that is, brokering) the charged methamphetamine distribution. To raise an entrapment defense, a defendant must make an initial showing: (i) that he was induced by a government actor to commit the crime at issue; and (ii) that he was not predisposed to commit that crime. *United States v. Blitch*, 773 F.3d 837, 843 (7th Cir. 2014); *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014). Defendant has not attempted to make such a showing. Moreover, the facts establish that the cooperators

---

[1] Redacted copies of these communications are available upon request.

4

did not induce defendant to aid and abet the drug distribution and that defendant was predisposed to commit the charge crime.

Inducement requires more than "'mere government solicitation of the crime.'" *Blitch*, 773 F.3d at 844 (quoting *Mayfield*, 771 F.3d at 434). In other words, "'the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement.'" *Blitch*, 773 F.3d at 844 (quoting *Mayfield*, 771 F.3d at 434). Rather, "inducement means government solicitation of the crime plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Mayfield*, 771 F.3d at 433. That "other" conduct could include: (i) repeated attempts at persuasion, (ii) fraudulent representations, (iii) threats, (iv) coercive tactics, (v) harassment, (vi) promises of reward beyond that inherent in the customary execution of the crime, (vii) pleas based on need, (viii) sympathy, (ix) friendship, or (x) "any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts." *Id*.

Predisposition, meanwhile, requires consideration of: (i) "the defendant's character or reputation"; (ii) "whether the government initially suggested the criminal activity"; (iii) "whether the defendant engaged in the criminal activity for profit"; (iv) "whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion"; and (v) "the nature of the inducement or persuasion by the government." *Id*. at 435. Although "predisposition is measured

prior to the government's attempts to persuade the defendant to commit the crime," the "defendant's response to the government's offer may be important evidence of his predisposition." *Id*. at 436–37.

Critical to this case, the Seventh Circuit repeatedly has required defendants seeking to raise an entrapment defense to make a pretrial factual proffer of evidence on both elements of the defense. *E.g.*, *id*. at 440; *see also Blitch*, 773 F.3d at 844 (rejecting request for entrapment defense absent a defense proffer and in light of government evidence showing no entrapment).

Here, defendant has failed to provide a proffer of the evidence on which he wants to rely at trial to establish entrapment. On the record currently in front of the Court, defendant cannot raise entrapment. Regarding inducement, the only benefit defendant received from the February 25th methamphetamine deal was the $500 payment, which defendant told both CW2 and later law enforcement officers that he did not really want. Moreover, the cooperating witnesses did not threaten defendant in any way, unlike the threats that the defendant in Mayfield claimed. *See Mayfield*, 771 F.3d at 421 ("When Potts said he was still associated with the Gangster Disciples, Mayfield took it as a warning that he would be in danger if he did not quickly pay up."). Even assuming the cooperating witnesses initiated contact with defendant, such conduct on its own cannot support an entrapment defense.

As for predisposition, the cooperating witnesses repeatedly discussed the possibility of a number of drug deals with defendant. Defendant spoke with at least five different drug suppliers about providing drugs to the cooperating witnesses:

"Arturo," Anthony Ledesma, Francisco Guel, Jaime Reyna, and Victor Israel Lozano-Garcia—all before the February 25th deal. Those relationships provide strong evidence of defendant's predisposition. Also evidencing predisposition is defendant's repeated use of coded language in the recorded conversations to discuss drug trafficking.

Meanwhile, no evidence in the record suggests any reluctance by defendant to engage in any of the contemplated transactions. To the contrary, defendant encouraged a reluctant cooperating witness to meet with defendant in January 2015 to provide a sample of heroin; and when Lozano-Garcia himself appeared reluctant to conduct a methamphetamine deal in February 2015, defendant quickly contacted Jaime Reyna about supplying the drugs without any pressure from the cooperating witnesses to do so.

In light of these facts and defendant's failure to provide a proffer, this Court should bar defendant from offering an entrapment defense.

## Conclusion

For these reasons, the government asks this Court to grant this motion and bar defendant Marco Camacho from raising an entrapment defense.

Respectfully submitted,
JOHN R. LAUSCH, JR.
United States Attorney

By: _s/ Paul H. Tzur_
PAUL H. TZUR
BRIAN S. WALLACH
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 353–5300

7