UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 15 CR 415-2 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| MARCO CAMACHO ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO
INTRODUCE CERTAIN EVIDENCE TO PROVE IDENTITY**

The UNITED STATES OF AMERICA, by and through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves this Court for a ruling *in limine* permitting the government to introduce certain evidence to prove that Camacho was the individual who committed the crimes charged. In support thereof, the government states as follows:

**Introduction**

The grand jury charged defendant Marco Camacho with aiding and abetting the distribution of 50 grams or more of actual methamphetamine by co-defendant Victor Israel Lozano-Garcia in February 2015. R. 100. The government is preparing to introduce evidence of communications and meetings to establish that Camacho brokered this drug transaction by Lozano to two individuals who, unbeknownst to either Camacho or Lozano, were in fact cooperating witnesses ("CW1" and "CW2"). On or about July 16, 2018, defendant filed a motion challenging agents' voice identification of defendant on recorded phone calls and meetings. R. 140. Because of this filing by defendant, as well as subsequent conversations with defense counsel, the government believes that defendant plans to argue at trial that he was not the

individual who committed the charged crime and that the voice in the recordings does not belong to him. In other words, defendant plans to challenge identity.

## Background

I.    **Recorded Conversations**

On or about January 15, 2015, per court-authorized wiretaps, the government began to intercept telephone and text message communications over telephone number (708) 790-3527. Some of the conversations took place in English, while many others took place in Spanish. The government anticipates that HSI Task Force Officer Fernando Zambrano will testify that he participated in a post-arrest interview of Camacho and that in preparation for trial, he listened to a recording of that interview, listened to numerous jail calls placed by Camacho, and listened to a number of other recordings in which Camacho identified himself. Based on these recordings, Task Force Officer Zambrano compared Camacho's known voice to the voice of the individual recorded over telephone number (708) 790-3527 and determined that Camacho's voice was the voice heard in all of these intercepted calls. The government plans to introduce the recordings themselves at trial for use by the jury.

Numerous calls intercepted over (708) 790-3527 as well as in-person meetings corroborate this conclusion. For instance, on or about December 6, 2014, the cooperating witnesses, who carried a hidden recording device with them, met in person with Camacho at his automobile wholesale business, Marco's Wholesale, which was located at 14311 S. Western Avenue in Blue Island, Illinois. After the cooperating witnesses entered the business, but before they began to speak with Camacho, the cooperating witnesses were in the vicinity when Camacho had a

conversation with two individuals who left their car with Camacho to be repaired. The recording device recorded the following:

> CAMACHO: That's my cellphone number; 790 3527, sweetie.
>
> UM: Okay.
>
> CAMACHO: Send me a text: "Marco, we're on our way."
>
> UM: Okay.
>
> CAMACHO: So that I can have everything ready for you.

On or about February 3, 2015 (TP1 Session 13135), a call was placed from an alarm company to telephone number (708) 790-3527. During the call, the operator from the alarm company said, "Hello, this is the alarm monitoring center, Operator 29, calling for Marco." The user of the (708) 790-3527 telephone (defendant Camacho) responded, "Yes." The operator then said, "We received a trouble on the fire alarm system. Marco's Wholesale, 14311 Western Avenue [the address to Marco's Wholesale]." Camacho responded, "You know? The . . . . Eh, maybe the light went out." Later that same day (TP1 Session 13156), a call was placed from (708) 790-3527 to an individual named "Greg." During the call, the user of (708) 790-3527 (defendant Camacho) said, "Mr. Greg, good morning. How are you?" Greg responded, "OK, Marco. How are you doing?" Camacho replied, "Fine, señor."

Also on or about February 3, 2015 (TP1 Session 13212), a call was placed from (708) 790-3527 to the business number for Marco's Wholesale, (708) 515-6004. During the call, a person at Marco's Wholesale said, "Thank you for calling Marcos Wholesale. How may I help you?" Defendant Camacho responded, "Marco, what are you doing?" The person at the shop then said, "Marco speaking. Here at the dealer.

3

I'm going to clean up the office." Camacho responded, "Yeah, clean up the office, but wash the two cars that are there, all right?" The government anticipates that the evidence will show that defendant Camacho had a son named Marco. This and other recordings of conversations with defendant's son will allow jurors to hear the differences in the sounds of defendant's and his son's voices.

Later on or about February 3, 2015 (TP1 Session 13360), the user of (708) 790-3527 placed a call to an individual named Amir. During the conversation, the user of (708) 790-3527 (defendant Camacho) said, "Hey, Amir." Amir responded, "Yeah." Camacho replied, "It's me, Marco."

On or about February 6, 2015, at about 2:38 p.m. (TP1 Session 14162), the user of (708) 790-3527 (defendant Camacho) called and spoke with CW1. During the conversation, Camacho asked CW1 to meet with him at a church on McKinley in Posen. A short time later, law enforcement officers observed the cooperating witnesses travel to Posen and arrive at a church located at 14414 S. McKinley Avenue. There, they observed Camacho sitting in a Toyota vehicle with license plates registered to Marco's Wholesale, and the law enforcement officers watched the cooperating witnesses meet in person with Camacho for about 20 to 30 minutes.

On or about February 17, 2015 (TP1 Session 17050), the user of (708) 790-3527 left a voicemail message for a person at telephone number (708) 552-6074. In the message, the user of (708) 790-3527 (defendant Camacho) said, "Um, hey listen. This is Marco. Can you give me a call back? Thank you. Bye."

On or about February 21, 2015 (TP1 Session 17972), the user of (708) 790-3527 received a phone call from an individual named Nick Halikias. During the call, Halikias said, "Marco Polo!" The user of (708) 790-3527 (defendant Camacho) responded, "What's up, Mr. Nick?" Halikias asked, "Not much. How are you doing?" Camacho responded, "Fine." Halikias then asked, "What time are you guys comin' to pick up the Cadillac?" Camacho responded, "I called the guy. He gonna call me back in a few minutes."

Similarly, on or about February 23, 2015 (TP1 Session 18144), the user of (708) 790-3527 received a phone call from Halikias. During the call, Halikias said, "Marco Polo." The user of (708) 790-3527 (defendant Camacho) responded, "What's up, Nick?" Later in the conversation, Halikias asked, "What's going on with that hot chocolate, Marco? I, I, I got a buy a car, and [*unintelligible*]." Camacho responded, "He wants the . . . . He wants the Cadillac. They coming maybe today. I was there in shop, waiting for them, but they don't show up. So maybe today they got the money, hopefully."

On or about February 24, 2015 (TP1 Session 18585), the alarm company for Marco's Wholesale again called telephone number (708) 790-3527. During the call, the alarm company operator said, "Hi, this is the alarm-monitoring center, Operator 27. May I please speak with Marco Camacho?" The user of (708) 790-3527 (defendant Camacho) responded, "This is Marco." The operator then said, "OK, sir. I was calling to notify that earlier today we had a trouble alarm on the fire alarm system from Marco's Wholesale." Camacho responded, "Right. You know is the

5

problem with the electricity. It's going on, on and off and, uh, they call me, too many, a lot of times every day, I mean. And then I called the, the electricity company to come and to see if they can come and fix it."

Later on or about February 24, 2015 (TP1 Session 18678), an individual named Anabel Rocha-Romero called telephone number (708) 790-3527. During the call, Rocha-Romero asked, "Are you Marcos or Marco [*unintelligible*]?" The user of (708) 790-3527 (defendant Camacho) responded, "No. Marco A. Camacho." Rocha-Romero then asked, "No, the name of the business." Camacho responded, "Marco's Wholesale. . . . Marco apostrophe S." Rocha-Romero asked, "Yes, OK. And when did you move to that location?" Camacho answered, "In 2012."

## II. Camacho's Post-Arrest Interview and Jail Calls

On or about April 21, 2015, defendant Camacho participated in a video-recorded interview with law enforcement officers with Homeland Security Investigations.[1] At the beginning of the interview, Camacho said that his name was "Marco, Marco Camacho." A still image taken from the video appears below:

---

[1] A copy of the transcript of the relevant portions of this interview is attached as Exhibit A.



During the interview, Camacho said, "[S]omebody ask me about the, um, if I know somebody selling shit, some drugs, and that's was I thinking he, he [*unintelligible*] and that what I was there and asking." The following exchanges also took place:

> HSI AGENT: OK, and what kind of drugs did you know that this guy sold?
>
> CAMACHO: This, this guy he told me he sells, ah, ah. What is it? Ah, crack? Crystal? Or some shit, you know?
>
> HSI AGENT: Crystal?
>
> CAMACHO: Crystal, yeah.
>
> HSI AGENT: Crystal meth?
>
> CAMACHO: Mm um hm.
>
> * * *
>
> HSI AGENT: Who is the meth gonna be for?
>
> CAMACHO: One Mexican.
>
> HSI AGENT: Who?
>
> CAMACHO: Hm . . . . What is his name. Shit . . . I don't remember his name.

7

> HSI AGENT: You don't know his name?
>
> CAMACHO: I don't even know his name.
>
> HSI AGENT: But it wasn't for you?
>
> CAMACHO: No, no, no, no, I don't buy no freakin' drugs.
>
> HSI AGENT: OK, so you, so you arranged it just to put the buyer and the seller together?
>
> CAMACHO: Yeah, because they asked me just to . . . .

In addition to the video-recorded interview, the government obtained a number of telephone calls obtained from the MCC Chicago between Camacho and other individuals. These calls provide additional known examples of Camacho's voice for the government's witness and the jury to use to confirm that Camacho was the individual intercepted using telephone number (708) 790-3527 in January and February 2015 in connection with the charged drug-trafficking crime.

### III. GPS Location Data

Beginning in December 2014, law enforcement received court authorization to obtain GPS location information in real time from (708) 790-3527. On or about January 14, 2015, law enforcement officers conducted surveillance on Camacho. GPS location data from (708) 790-3527 showed that at about 10:00 a.m., the phone was located within 872 meters (about a half mile) of East 99th Place and Martin Luther King Drive, about a block away from the Secretary of State's office located at 9901 S. Martin Luther King Drive in Chicago. At approximately 10:04 a.m., surveillance officers observed Camacho's vehicle parked at the Secretary of State offices. At about 10:45 a.m., GPS location data from the phone assigned to (708) 790-3527 showed that the phone was located with 872 meters of a point about two blocks to the west of the

Secretary of State's office. At about 11:04 a.m., surveillance officers observed Camacho exit the Secretary of State's office, get into the vehicle the officers saw parked by the offices, and drive away. The GPS data thus showed that the phone was in the same vicinity as Camacho.

On or about January 16, 2015, at about 3:04 p.m. (TP1 Session 7185), a call was placed from (708) 790-3527 to CW1. During the call, the user of (708) 790-3527 (Camacho) asked CW1 to meet with Camacho at "Trino's shop," which Camacho said was located "on 144 and Wood." At about 3:58 p.m., law enforcement officers conducting surveillance observed Camacho arrive in a vehicle with license plates registered to him at Trino's Auto Shop, located at 14354 Wood Street in Dixmoor. The officers also observed Camacho meet there with the cooperating witnesses for about the next seven minutes. GPS location data from the phone assigned to (708) 790-3527 showed that at about 4:00 p.m.—while Camacho was meeting with the cooperating witnesses at Trino's—the phone was located at Trino's, with an accuracy of about 134 meters.

On or about January 19, 2015, at about 10:55 a.m., law enforcement officers observed a vehicle with Camacho's dealer license plates parked in front of the ABC Wireless store located at 3328 147th Street in Midlothian. At about 11:00 a.m., GPS location information from the phone assigned to (708) 790-3527 showed that the phone was located within 46 meters from a spot across the street from the ABC Wireless store at the intersection of 147th Street at Turner Avenue. At about 11:15 a.m., GPS location information from the phone showed that was located within

9

36 meters from a spot on Turner Avenue directly in front of the ABC Wireless store. At about 11:15 a.m., GPS location information from the phone showed that was located within 1,281 meters from a spot about a half block to the west of the ABC Wireless store. At approximately 11:37 a.m., surveillance officers observed Camacho exit the ABC Wireless store, enter the vehicle with license plates assigned to his business, and drive away from the area. The GPS data again showed that (708) 790-3527 was in the vicinity of Camacho when Camacho was observed by law enforcement officers.

## Argument

The government wants to introduce voice-identification evidence establishing that defendant was the individual recorded in the intercepted calls and consensually recorded conversations. Specifically, the government intends to present testimony of Task Force Officer Zambrano that in preparation for trial, Zambrano listened to the post-arrest interview of Camacho, recordings in which Camacho was identified as "Marco" or "Marco Camacho," and Camacho's jail calls, and compared Camacho's voice to the voice in the intercepted calls and recorded meetings. The government anticipates that Task Force Officer Zambrano will testify that transcripts of these and other recordings the government plans to introduce identifying Camacho's voice accurately reflect Camacho speaking in the recordings. The government also will admit many of these recordings for use by the jury in its deliberations. And, the government anticipates that one or both of the cooperating witnesses will also testify

10

that the person with whom they spoke in person and by phone in the recorded conversations was Camacho.

**I.  Admissibility of Voice Identification Evidence**

The government seeks a ruling that lay-opinion voice-identification testimony is admissible. Pursuant to Federal Rule of Evidence 901(b)(5), a witness is permitted to offer a lay opinion identifying a person's voice "whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." A witness need only have "minimal familiarity" with the voice. *United States v. Neighbors*, 590 F. 3d 485, 493 (7th Cir. 2009); *United States v. Cruz-Rea*, 626 F. 3d 929, 935 (7th Cir. 2010) (finding the "low bar" of minimal familiarity met where a law enforcement officer became familiar with a defendant's voice by listening to an approximately fifteen second voice exemplar at least fifty to sixty times and identifying defendant's voice on approximately 24 intercepted calls). Ultimately, the determination of the accuracy and reliability of voice identification testimony is a decision for the jury. *Cruz-Rea*, 626 F. 3d at 395.

In this case, Task Force Officer Zambrano participated in the April 2015 interview with Camacho. Zambrano also has watched and listened to the recording of that interview numerous times. The recording is over ten minutes long, and Camacho answered a number of questions during that time. In addition, Zambrano has listened to intercepted communications and recorded meetings in which Camacho identified himself or responded to others identifying him as "Marco." And, Zambrano has listened to numerous recordings of jail calls that Camacho placed while housed

11

at the MCC Chicago. Zambrano compared Camacho's known voice from these recordings to the voice on the recordings of the intercepted communications and recorded meetings. As a result of this process, Zambrano confirmed that the transcripts in this case truly and accurately reflected Camacho as the speaker in the intercepted calls and recorded conversations. That conclusion was corroborated by the cooperating witnesses, at least one of whom the government anticipates calling at trial. Zambrano's anticipated testimony lays appropriate foundation for the admission of the transcripts and translations identifying Camacho as the speaker in conversations, and constitutes proper lay-opinion testimony. Fed. R. Evid. 901(b)(5). Moreover, Zambrano's anticipated testimony satisfies the minimal familiarity standard, and so his testimony is admissible. *Cruz-Rea*, 626 F. 3d at 395.

## II. GPS Location Data

### A. Admissibility of GPS Data

The government initially moves for a ruling that the GPS location data—the longitude and latitude coordinates associated with defendant's cellular telephone—is admissible. GPS data is not hearsay because the data resulted from an automated process, is not the statement of a person. *See, e.g., United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (holding that a "physician's diagnosis is testimonial, but the lab's raw results are not, because data are not 'statements' in any useful sense," nor "is a machine a 'witness against' anyone") (citing *United States v. Washington*, 498 F.3d 222, 230-31 (4th Cir. 2007) (raw data generated by machines are not statements, and machines are not declarants, and data thus is not hearsay as implicated by the Confrontation Clause)); *United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir.

12

2008); *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005) (computer-generated header information connected to pornographic images uploaded by defendant was not hearsay because such information was automatically generated by the computer without the assistance or input of a person); *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir. 2003) (fax header and text are not hearsay because nothing said by a machine is hearsay). GPS data is not a "statement" as defined in Rule 801(a), and T-Mobile's computer system is not a "declarant" as defined in Rule 801(b). As such, the admission of the GPS location data is not governed by the hearsay rules.

Moreover, even if the Court were to conclude that the GPS data was governed by the hearsay rules, the data would be admissible as a business record under Federal Rule of Evidence 803(6). The government anticipates that a representative of T-Mobile would be available to testify that: (1) the GPS data was recorded as part of regularly conducted activity; (2) the record of the GPS data was made at or near the time of the activity; and (3) that it was the regular practice of T-Mobile to generate and maintain the GPS data. As such, the GPS data should also be admissible as a business record. *See United States v. Brooks*, 715 F.3d 1069, 1079 (8th Cir. 2013) ("The district court, however, did not abuse its discretion in overruling Brooks's hearsay objection as the GPS tracking reports fell under the business records exception.") (citing *United States v. Wood*, No. 08 CR 92A, 2009 U.S.Dist. LEXIS 50335, at *4 (W.D.N.Y. July 15, 2009)).

  **B. Use of GPS Data to Create Trial Exhibits**

The government anticipates that HSI personnel will input the longitude and latitude coordinates contained in the GPS data provided by T-Mobile into Google

13

Maps or a similar program to generate maps the government may seek to introduce into evidence. Navigation and mapping devices such as Google Maps have become a common tool and require no specialized training to utilize. As such, the HSI personnel should be permitted to create admissible exhibits, namely, maps, based upon the GPS data provided by T-Mobile. *See United States v. Lee*, 339 F. A'ppx 153, 160 (3d Cir. 2009) (unpublished) (permitting employee of U.S. Attorney's Office to testify regarding distances between a school and a narcotics house after examining a map created using a GPS computer program because the witness's "use of a GPS navigation program relies on a tool used in everyday life, and requires no specialized training or knowledge"). Indeed, the use of Google Maps has gained wide acceptance by the courts. *See, e.g.*, *Stormans, Inc. v. Wiesman*, 136 S. Ct. 2433, 2433 (2016) (explaining that certain pharmacies were at distances from each other "as calculated by Google Maps driving directions"); *Tradesman Intern., Inc. v. Black*, 724 F.3d 1004, 1015 (7th Cir. 2013) (using Google Maps to determine the distance between two offices); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 n.3 (7th Cir., 2013) ("We have taken judicial notice of—and drawn our distance estimates from—images available on Google Maps, a source whose accuracy cannot be reasonably questioned, at least for the purpose of determining general distances") (citation and internal quotation omitted); *United States v. Schultz*, 537 F. App'x 702, 705 n.1 (9th Cir. 2013) ("We may take judicial notice of maps, including Google Maps, to determine distances and locations."); *United States v. Castellanos*, 716 F.3d 828, 841 n.6 (4th Cir. 2013) (taking judicial notice of map acquired from Google Maps). Accordingly, the Court

14

should permit the testimony of the HSI analyst regarding her use of a mapping program such as Google Maps to create exhibits from the GPS data acquired from T-Mobile and permit the admission of the created exhibits.

## Conclusion

For these reasons, the government respectfully requests that the Court grant this motion and admit the requested testimony.

Respectfully submitted,<br>
JOHN R. LAUSCH, JR.<br>
United States Attorney

By:   s/ *Kristen Viglione*
     PAUL H. TZUR
     KRISTEN VIGLIONE
     Assistant United States Attorneys
     219 South Dearborn Street, 5th Floor
     Chicago, Illinois 60604
     (312) 353-5300